UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:23-CV-00035-REW-EBA

SETH LITTLE,                                                                                              PLAINTIFF,

V.                          **REPORT & RECOMMENDATION**

XTREMEPOWERUSA,                                                                                  DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Seth Little allegedly sustained a facial laceration while operating an auger designed and manufactured by Defendant Stark Group, LLC.[1] Little retained counsel, who penned a letter addressed to "XtremepowerUSA" which communicated Little's willingness to settle this matter pre-suit for $75,000.[2] In that letter, Little's counsel was clear that the $75,000 offer was a starting point for negotiation. Receiving no correspondence from Stark Group, Little sued it in Knott Circuit Court. [R. 1-1]. Little's complaint raises a product liability claim against Stark Group and alleges that he sustained "permanent bodily injuries, pain and suffering, loss of enjoyment of life, lost wages, impairment of power to earn money in the future, medical expenses, travel expenses, and other miscellaneous expenses, all past and future" and "property damage" from the accident. [*Id.* at pgs. 7–8]. Stark Group promptly removed this action to federal court under a diversity theory. [R. 1]. Now, Little moves to remand to Knott Circuit Court. [R. 8]. The matter is fully briefed and ripe for review.

---

[1] According to Stark Group, XtremepowerUSA "is not a legal entity. XtremepowerUSA is a product branding. Instead, Stark Group is the proper defendant, as it sold the subject auger to Plaintiff. Thus, this removal is on behalf of Stark Group." [R. 1 at pg. 1].

[2] Where the amount in controversy is $75,000, it's "exactly one penny short of the jurisdictional minimum of the federal courts." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011).

ANALYSIS

*Motion to Remand*

A.

A defendant may remove a civil action to federal court if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A federal court generally has original jurisdiction where a federal question is raised or where diversity exists. Diversity exists where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of different states." 28 U.S.C. § 1332(a)(1). The removing party "has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010) (citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)).

In Kentucky state courts, plaintiffs are prohibited from stating a specific amount that they seek to recover in their complaint. KY. R. CIV. P. 8.01(2). Where the complaint is silent on the amount in controversy, as is the case with complaints filed in Kentucky state courts, the removing must establish that it's "more likely than not" that the amount in controversy requirement was satisfied at the time of removal. *Gafford v. General Elec. Co.*, 997 F.3d 150, 158 (6th Cir. 1993). Often, to satisfy this burden, pre-remand discovery into the amount in controversy is required. *Peichoto v. Speedway, LLC*, No. 5:19-cv-58-REW, 2019 U.S. Dist. LEXIS 203203, at *3 (E.D. Ky. Nov. 22, 2019) (remarking that, in Kentucky, parties "often must engage in pre-removal discovery before a defendant can ascertain that a case is removable"). When considering such removals, courts rely on "a fair reading of the Plaintiff's complaint, common sense, and its own judicial experience." *Caperton v. State Auto Prop.*, No. 6:22-cv-101-CHB-HAI, 2022 WL 17813795, at *3 (E.D. Ky. July 5, 2022). Because federal courts enjoy limited

jurisdiction, removal statutes are construed narrowly, and doubts are resolved in favor of remand. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006).

B.

Little argues that this matter should be remanded to state court because the amount in controversy requirement isn't satisfied.[3] [R. 8]. In his view, Stark Group did little more than "[s]imply say[] that the amount-in-controversy requirement is met," which of course isn't enough to satisfy its burden of proof. *King v. Household Fin. Corp. II*, 593 F. Supp.2d 958, 959–60 (E.D. Ky. 2009); *see* [R. 8 at pg. 2] (arguing that Stark Group "simply relies upon its own self-serving statements in support of its position that the amount in controversy is met"). Instead, Little argues that Stark Group should've engaged in some discovery as to the amount in controversy before removing this action. [*Id.* at pg. 2] (arguing that "when the amount of damages claimed is not set forth in the Complaint, it is incumbent upon the defendant to engage in discovery before removing the case") (collecting cases); *but see Caperton*, 2022 WL 17813795, at *3 ("The removing party is not required to seek information from the Plaintiff regarding damage claims through interrogatories or other discovery.") (referencing *Blackburn v. Medtronic, Inc.*, No. 5:19-cv-457-GFVT, 2020 WL 4288457, at *3 (E.D. Ky. July 24, 2020)).

Stark Group, on the other hand, argues that the amount in controversy requirement is met based on the face of Little's complaint. [R. 11 at pg. 4] ("'[A] commonsense view of the claimed injury nature and related damages' can lead to a conclusion it was 'more likely than not' the amount in controversy was satisfied.") (quoting *Peichoto*, 2019 U.S. Dist. LEXIS 203203, at *12). Moreover, Stark Group reads Little's pre-suit letter to communicate a take-it-or-leave-it offer—not a highball offer intended to start negotiations—which would suggest that Little values his

---

[3] In reply, Little concedes that diversity of citizenship is a non-issue. [R. 12 at pg. 1] (noting that "the only real issue in dispute . . . is the amount in controversy requirement").

claim's worth at more than the $75,000 he demanded prior to filing suit.[4] [*Id.* at pgs. 7–10] (discussing *Caperton*, 2022 WL 17813795, at *5–7).

Both Little and Stark Group emphasize opposite sides of the same coin. It's true that Stark Group must present "competent proof" of the at-issue amount. *Cleveland Hous. Renewal Project*, 621 F.3d at 559. Said proof "'can include affidavits, documents, or interrogatories' obtained during pre-removal discovery"—including "settlement demand letters and other correspondence between parties[.]" *Peichoto*, 2019 U.S. Dist. LEXIS 203203, at *4 (quoting *Bishop v. Tennessee Gas Pipeline, LLC*, No. 5:17-cv-424-JMH, 2018 WL 4686416, at *2 (E.D. Ky. Sept. 27, 2018); *Mathes v. Burns*, No. 3:19-cv-751, 2019 WL 5394310, at *5 (M.D. Tenn. Oct. 22, 2019)). It's also true that the court will conduct a "commonsense" review of Little's complaint to determine whether the amount in controversy exceeds $75,000. *Id.* at *12. Synthesized, courts evaluate any proffered competent proof against the backdrop "of a 'fair reading' of the allegations in the complaint." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014) (quoting *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001)).

C.

Stark Group offers a few pieces of proof to demonstrate that the amount in controversy exceeds the jurisdictional requirement: Little's pre-suit demand letters, one of Little's TikTok videos, and some jury award data that it compiled.

The undersigned begins with the direct proof—Little's pre-suit letters. The December Letter reads, in relevant part:

> While we are preparing to file suit, we would like to resolve this matter short of litigation. Therefore, my client has authorized me to tender a settlement demand of $75,000.00 for a release of all claims against you, your companies and employees

---

[4] The Stark Group attests that it didn't receive Little's pre-suit demand letters. *See* [R. 11-4 at pgs. 1–2]. That's not a problem at this juncture, however, as the letters are being used *solely* to compute the potential value of Little's claim.

> for the injuries my client has suffered. Please understand that this is **only an opening offer and we are willing to negotiate and work with you in resolving this matter**. Therefore, **I do have some room to move on this number** if you are willing to work to resolve the matter. This offer will be held open for a reasonable time and, if I have not hear back from you within that time period, we will proceed with the filing of suit.

[R. 11-3 at pg. 2] (emphasis added). The May 8, 2023 Letter reads, in relevant part:

> [W]e were very clear that our demand pre-suit is [$75,000]. Further, you will see in the correspondence that **we have room to negotiate**. Please have your client respond to our [$75,000] demand **if they have any interest in working this matter out**. Otherwise, I will assume that you are just attempting to ignore the [$75,000] demand by refusing to acknowledge the same.

[R. 11-3 at pg. 1] (emphasis added). And the May 9, 2023 Letter reads, in relevant part:

> Am I also to interpret your letter as a complete rejection of our [$75,000] offer or do you accept the [$75,000] offer? Either way, please promptly advise whether you accept or reject the offer.

[R. 11-5 at pg. 1].

Stark Group leans heavily on the last letter[5]—penned May 9—to contend that Little's offer is, in fact, a take-it-or-leave-it offer. Take-it-or-leave-it offers "diminish the claim's value as a trade-off for avoiding the time and expense involved in litigation." *Caperton*, 2022 WL 17813795, at *5 (citing *Smith v. Phillips & Jordan, Inc.*, No. 7:10-cv-314-ART, 2011 WL 250435, at *2 (E.D. Ky. Jan. 24, 2011)); *see also May v. Wal-Mart Stores, Inc.*, 751 F. Supp.2d 946 (E.D. Ky. 2010). Such offers differ markedly from initial highball offers, which instead aim to "get negotiations started." *Caperton*, 2022 WL 17813795, at *5. Since take-it-or-leave-it offers undercut a case's value, it's reasonable to presume that the amount in controversy exceeds the offer; however, with highball offers the amount in controversy may fall below the offer. *See Smith*,

---

[5] Writing in reply, Little refers to another letter mailed on May 24, 2023. [R. 12 at pg. 3]. However, the letter appears nowhere in the record (Little suggests the letter is "Exhibit 3," however, his reply doesn't include any exhibits). According to Little, it reads, in relevant part: "my offer of [$75,000] is most reasonable and as previously mentioned, we do have some room to negotiate. Therefore, promptly advise if you have a counter-offer or if you accept the demand of [$75,000]." [*Id.*].

2011 WL 250435, at *2 ("The demand might be significantly more than the case is actually worth. As this Court said in *May*, 'high-balling the initial settlement demand is Negotiation 101.'") (quoting *May*, 751 F. Supp.2d at 949). This distinction is an important one, since "[t]he weight to be given a demand letter varies with the circumstances of the case." *Caperton*, 2022 WL 17813795, at *5.

Little's pre-suit demand letters, taken together, indicate the plaintiff's position that the case is worth—at most—$75,000. The letters emphasize at length that Little views his $75,000 offer as an "opening offer" and that he is "willing to negotiate" with Stark Group to resolve the matter. [R. 11-3 at pgs. 1–2]. Such statements are indicative of an initial highball offer, not one of the take-it-or-leave-it variety. In fact, Little's letters differ starkly from the settlement demand commanded by the plaintiff in *Caperton*, upon which the Stark Group heavily relies. There, the letter demanded $74,000 payment within forty-eight hours and "in no way present[ed] itself as an invitation to engage in bargaining. Instead, the demand letter promise[d] to punish Defendants in court if the demand is not met." *Caperton*, 2022 WL 17813795, at *5.

Little's letters aren't "competent" proof that the amount in controversy exceeds $75,000. This is true even when accounting for an award of punitive damages, which Little seeks in his complaint, because (as Little clarifies in reply) his $75,000 demand "encompassed punitive damages." [R. 12 at pg. 4]. Put another way, Little seemingly values his case at $75,000 inclusive of compensatory and punitive damages. And that's all that his pre-suit letters demonstrate. As Little's letters are "not determinative of the amount in controversy," they do "not prove by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000." *May*, 471 F. Supp.2d at 949.

Stark Group also offers screenshots of a video that Little uploaded to TikTok as evidence that the amount in controversy exceeds $75,000. [R. 11-2]. Specifically, Stark Group highlights

that Little's facial laceration required "at least ten stitches to close," and that his future medical expenses "may include the cost of plastic surgery to repair the scarring." [R. 11 at pg. 6]. Also, Stark Group points out that Little captioned the video "4 Life" and that he commented on the video that the "Damn thing [the auger] malfunctioned and broke when I was doing my fence destroyed my face lol." [*Id.* (quoting [R. 11-2]). This provides nothing more to quantify the amount in controversy than does Little's complaint, and so is a far cry from competent proof that the amount in controversy exceeds the jurisdictional minimum. *See* [R. 1-1 at pgs. 7–8]. "[P]reserving the line between state and federal jurisdiction demands a good deal more." *May*, 751 F. Supp.2d at 955.

As to indirect proof, Stark Group offers general Kentucky jury verdict data. [R. 11-6]. The data indicate that Kentucky juries award, on average, $119,798 to plaintiffs for compensatory damages for facial/dental injuries. [R. 11 at pg. 6] (referencing [R. 11-6]). And in Knott Circuit Court, juries award an average verdict of $3,875,000 to plaintiffs in product liability cases. [*Id.*]. This data, however, means little to the undersigned. This case doesn't concern a catastrophic injury—as evinced by Little's highball offer of $75,000. Rather, it involves a facial laceration that required just ten rather small stitches. *See* [R. 11-2]. Moreover, Stark Group undertook little-to-no-effort to demonstrate how this case fits into the Kentucky jury verdict data. Is this case rightly considered average, below-average, or above-average? Stark Group offers no insight. Thus, Stark Group's jury verdict data, alone, doesn't prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Because Stark Group failed to carry its burden to prove this Court has jurisdiction, the undersigned recommends Little's motion to remand be granted. *See May*, 751 F. Supp.2d at 955 ("A federal court must presume that it lacks jurisdiction until the parties prove to the contrary.").

*Attorney's Fees*

Little requests an award of attorney's fees pursuant to 28 U.S.C. § 1447(c), [R. 8 at pgs. 4–5], which allows the Court to award "just costs and any actual expenses, including attorney fees" incurred because of removal. § 1447(c). Fee awards under § 1447(c) are only appropriate where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005); *see also Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013). Although the undersigned recommends remanding this case back to state court, it cannot say that Stark Group's removal lacked an objectively reasonable basis. Stark Group needed only to show that Little's claim could rightly be valued at one penny more than his highball offer. Accordingly, "this is not one of the rare cases where an award of attorney's fees is justified," so the undersigned recommends Little's motion for an award of attorney's fees be denied. *Combs v. ICG Hazard, LLC*, 934 F. Supp.2d 915, 932 (E.D. Ky. 2013) (remanding back to state court but refusing to award attorney's fees).

CONCLUSION

Therefore,

IT IS RECOMMENDED That Little's motion to remand [R. 8] be GRANTED and his request for attorney's fees [R. 8] be DENIED.

\*\*\* \*\*\* \*\*\* \*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v.*

*Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed June 23, 2023.



Signed By:
*Edward B. Atkins*   *EBA*
United States Magistrate Judge